*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. TACKETT, Minor.

UNPUBLISHED
December 23, 2024
9:41 AM

No. 371409
Calhoun Circuit Court
Family Division
LC No. 2023-000902-NA

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child, RT, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), MCL 712A.19b(3)(c)(*ii*) (other conditions exist and were not rectified), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

After a lengthy family history of domestic violence, substance abuse, housing instability, and criminality, as well as an extensive history of abuse investigations by Child Protective Services (CPS), the Department of Health and Human Services (DHHS) removed RT from respondent's care. After the adjudication and dispositional hearing, a case service plan and treatment plan were ordered, including psychological evaluations, housing and employment resources, drug screenings, counseling, parenting skills, parenting time, and transportation assistance.

After three permanency planning hearings, the trial court found that despite reasonable efforts at reunification by DHHS, respondent had not benefited and had not made progress with her care service plan although numerous services had been offered. The trial court's conclusion was supported by the evidence. For example, at the third permanency planning hearing, the foster care worker testified that a multitude of services were offered to respondent, including psychological evaluation, substance-abuse counseling, drug screening, individual counseling, housing resources, employment resources, and parenting time. But, the worker testified, respondent's compliance with the treatment plan was poor. Respondent failed to show up to three scheduled psychological evaluations; failed to participate in random-drug screenings but a vast majority of her scheduled drug screenings were positive for amphetamines and

-1-

methamphetamines; and she missed about half of her parenting time visits with RT. The foster care worker recommended that the goal for RT change from reunification to adoption because of respondent's poor compliance with her overall treatment plan and RT had been living with his aunt and uncle for over a year. The trial court agreed with the foster care worker, and ordered the DHHS to initiate termination proceedings. Subsequently, at the conclusion of the termination trial, the trial court terminated respondent's parental rights, as stated above.

Respondent now appeals as of right, arguing that the DHHS did not make reasonable efforts to reunify her and RT before terminating her parental rights. We disagree.

## II. PRESERVATION AND STANDARD OF REVIEW

"In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). A respondent should raise a claim that the DHHS has failed to make reasonable efforts to reunify the family when the DHHS adopts the case service plan or soon after. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (citation omitted). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). "[S]ervices that are adequate at the beginning of the case may become inadequate as the case proceeds." *Id*. "It is because of the constantly changing dynamic in a child protective case that a respondent has multiple opportunities to, as the circumstances change, object to the adequacy of the services being provided." *Id*. at 337-338. However, the window for challenging the adequacy of the efforts made by the DHHS ends at reunification or when the trial court terminates a respondent's parental rights. *Id*. at 337.

To the extent that respondent argues that the DHHS failed to provide housing assistance or other services, this argument is not preserved because respondent never challenged those services as inadequate during the proceedings below. However, to the extent that respondent argues that the DHHS failed to provide transportation assistance, respondent arguably preserved this argument when she asserted at the termination trial that she missed drug screens and parenting-time visits because of the lack of transportation assistance.

A trial court's decision regarding reasonable efforts is reviewed for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (citation omitted). This Court reviews unpreserved claims of error in a termination-of-parental-rights case for plain error. *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). On plain-error review, the respondent has the burden to show that an error occurred, the error was plain, i.e., clear or obvious, and the error affected the respondent's substantial rights or caused prejudice, i.e., it affected the outcome of the proceedings. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); see, also, *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## III. REASONABLE EFFORTS

Generally, "when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542; see, also, *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). A trial "court is not required to order the agency to initiate proceedings to terminate parental rights if . . . [t]he state has not provided the child's family . . . with the services the state considers necessary for the child's safe return to his or her home, if reasonable efforts are required." MCL 712A.19a(8)(c). Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App at 711.

Respondent argues that the DHHS "did nothing to prevent removal" before termination. We disagree.

The DHHS engaged in reasonable efforts and provided respondent with a multitude of services as discussed above, including psychological evaluations, housing and employment resources, drug screenings, counseling, parenting skills, parenting time, and transportation assistance. Nevertheless, her compliance with the treatment plan was poor. Respondent failed to fully participate in services from the start of the case. She missed four scheduled psychological evaluations, missed over half of scheduled parenting time visits which caused RT significant distress, she had positive drug screenings and respondent missed 17 random drug screening tests. Respondent failed to provide the necessary medical releases to show whether she received any mental health treatment, substance abuse treatment, counseling services, or medications. She also failed to submit proof that she attended parenting classes. Although this matter was pending for about 13 months, respondent did not complete her psychological evaluation until during the middle of the termination trial. She also never provided verified drug screening results and the in-patient paperwork she provided to her caseworker during the middle of the termination trial showed that she left the rehabilitation facility after only seven days.[1] Although respondent had a significant history of substance abuse, she never participated in the necessary and verifiable services to establish that she was no longer abusing substances.

Despite respondent's emphasis on her transportation issues, the gas cards that she did receive were not used properly because she misled her caseworker about needing them to travel to a rehabilitation facility even though she had returned from the facility the day before.[2]

---

[1] Although respondent referred to six drug screens that were negative, all of those screens were planned in advance and were self-administered, without supervision. As the trial court noted at the termination hearing "she's missed every random drug screen offered to her . . . ."

[2] We note that, after the termination trial, the trial court found that the testimony of respondent was not credible. That finding is corroborated by the record in this matter. By way of example, respondent testified at the trial that she did not have a substance abuse problem. However, the record demonstrates that respondent pled to use of methamphetamine in October 2022, had tested

Respondent's parenting-time attendance rate never surpassed approximately 50% throughout the case between two caseworkers. She also no-showed numerous times despite confirming her attendance the morning of the visits, causing RT to present with a "depressed, down affect." Respondent obtained her own housing, but she did not allow for any type of inspection in order to demonstrate that it was appropriate housing for RT. The record supports that, although reasonable efforts were made to provide services to respondent, she did not take advantage of the services provided. As the trial court further noted, the caseworker was "not required to go to [respondent's] house and pick her up for every session and every appointment." The caseworker did attempt to assist respondent with her transportation issues but respondent was also required to assist herself to accomplish the requirements of the case service plan. To prove a claim of lack of reasonable efforts, a respondent must show that she would have fared better had petitioner offered other services. See *In re Fried*, 266 Mich App at 543. Respondent was provided numerous services over the course of this matter but failed to timely complete or benefit from those services and she did not establish that she would have fared better had additional services been offered. Because respondent did not benefit from or sufficiently cooperate and participate in the services provided, *In re TK*, 306 Mich App at 711, the trial court did not clearly err in finding, by clear and convincing evidence, that the DHHS made reasonable efforts to reunify respondent and RT before termination. See *In re Fried*, 266 Mich App at 542-543.[3]

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace

---

positive for methamphetamine in September 2023, had left a rehabilitation facility after only 7 days, refused to provide random drug screenings, and did not participate in drug abuse counseling, but testified that she was prescribed Suboxone (a drug often prescribed to assist with drug rehabilitation).

[3] Respondent does not challenge the trial court's findings with regard to the statutory grounds supporting termination or RT's best interests. Therefore, we may assume that the trial court did not clearly err in making those findings. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). Regardless, having reviewed the record, it is evident that the trial court did not clearly err by finding that at least one of the alleged statutory grounds was supported by clear and convincing evidence, see *In re Williams*, 286 Mich App at 271, and that a preponderance of the evidence supported that termination was in RT's best interests, see *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014).